[901 NE2d 744, 873 NYS2d 251]

Pasquale D'Onofrio et al., Appellants, v City of New York, Respondent, and New York City Transit Authority, Defendant.

Ida Shaperonovitch et al., Respondents, v City of New York, Appellant.

Argued November 20, 2008; decided December 18, 2008

**POINTS OF COUNSEL**

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), and *Burns & Harris* (*Seth A. Harris* of counsel), for appellants in the first above-entitled action. The complaint should not have been dismissed as the Big Apple map sufficed to give the City of New York prior written notice as required under the Pothole Law. The jury was properly allowed to decide the issue, and its liability verdict in favor of plaintiff was not irrational or legally insufficient and should not have been disturbed. (*Becker v City of New York,* 131 AD2d 413; *Acevedo v City of New York,* 128 AD2d 488; *Cipriano v City of New York,* 96 AD2d 817; *Matter of Big Apple Pothole & Sidewalk Protection Comm. v Ameruso,* 110 Misc 2d 688; *Amabile v City of Buffalo,* 93 NY2d 471; *Holt v County of Tioga,* 56 NY2d 414; *Fullerton v City of Schenectady,* 285 App Div 545, 309 NY 701, 350 US 980; *Barry v Niagara Frontier Tr. Sys.,* 35 NY2d 629; *Bruni v City of New York,* 2 NY3d 319; *Poirier v City of Schenectady,* 85 NY2d 310.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Deb-*

*orah A. Brenner, Stephen J. McGrath* and *Alan Beckoff* of counsel), for respondent in the first above-entitled action. The trial court properly set aside the jury verdict and directed that judgment be entered in the City of New York's favor because the City had not received prior written notice of the sidewalk defect that caused plaintiff's accident. (*Amabile v City of Buffalo,* 93 NY2d 471; *David v City of New York,* 267 AD2d 419; *Katz v City of New York,* 87 NY2d 241; *Poirier v City of Schenectady,* 85 NY2d 310; *Leary v City of Rochester,* 67 NY2d 866; *Roldan v City of New York,* 36 AD3d 484; *Waner v City of New York,* 5 AD3d 288; *Curci v City of New York,* 209 AD2d 574; *Jones v Town of Brookhaven,* 227 AD2d 530; *Fraser v City of New York,* 226 AD2d 424.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Deborah A. Brenner* and *Barry P. Schwartz* of counsel), for appellant in the second above-entitled action. Because the Big Apple map bore no symbol corresponding to the defect at issue here, but only an indecipherable or ambiguous marking that was legally insufficient to constitute prior written notice of any specific hazard, the Appellate Division erred as a matter of law in declining to dismiss the complaint. (*Katz v City of New York,* 87 NY2d 241; *David v City of New York,* 267 AD2d 419; *Drennen v City of New York,* 256 AD2d 379; *Poirier v City of Schenectady,* 85 NY2d 310; *Amabile v City of Buffalo,* 93 NY2d 471; *Laughton v City of New York,* 30 AD3d 472; *Solone v City of New York,* 238 AD2d 332; *Gianna v Town of Islip,* 230 AD2d 824; *Espinosa v JMG Realty Corp.,* 53 AD3d 408; *Roldan v City of New York,* 36 AD3d 484.)

*Lester B. Herzog,* Brooklyn, for respondents in the second above-entitled action. Since, as noted by a unanimous panel of the Appellate Division, Second Department, the Big Apple map "contained numerous symbols for defects at the location of the accident" and since one of them was "ambiguous" as conceded by the City of New York's witness, the factual dispute regarding the issue of prior written notice was properly submitted to the jury. The verdict in favor of plaintiffs was not irrational or legally insufficient and should not be disturbed. (*Almadotter v City of New York,* 15 AD3d 426; *Vertsberger v City of New York,* 34 AD3d 453; *Weinreb v City of New York,* 193 AD2d 596; *Alvino v City of New York,* 49 AD3d 676; *Kruszka v City of New York,* 29 AD3d 742; *Silva v City of New York,* 17 AD3d 566; *Doremus v Incorporated Vil. of Lynbrook,* 18 NY2d 362; *City of New York v Kalikow Realty Co.,* 71 NY2d 957; *Garricks v City of New York,* 1 NY3d 22; *Lopes v Rostad,* 45 NY2d 617.)

SMITH, J.

In each of these cases, the issue is whether a map submitted to New York City by Big Apple Pothole and Sidewalk Protection Corporation gave the City the notice of a sidewalk defect that is required by the Pothole Law (Administrative Code of City of NY § 7-201 [c] [2]). We hold that neither map adequately identified the defect.

Pasquale D'Onofrio and Ida Shaperonovitch fell and were injured while walking in New York City. They and their spouses sued the City for their injuries. The City defended the lawsuits on the basis of the Pothole Law, which says in relevant part:

> "No civil action shall be maintained against the city for . . . injury to person . . . sustained in consequence of any . . . sidewalk . . . being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice." (*Id.*)

Plaintiffs asserted that Big Apple maps had given the "written notice" that the law requires.

Big Apple is a corporation established by the New York State Trial Lawyers Association for the purpose of giving notices in compliance with the Pothole Law. It does so through maps on which coded symbols are entered to represent defects. For example, a straight line is used for a raised or uneven portion of a sidewalk, a circle for a hole or hazardous depression, a line with a triangle at each end for an extended section of cracks and holes in a sidewalk, and so forth. In each of these cases, Big Apple submitted a map to the City before the accident; the map had a symbol at the place where the accident happened; and the issue is whether the symbol was sufficient notice of the defect complained of.

The notice issue was submitted to the jury in both cases, and both juries found the notice adequate. In *D'Onofrio*, however, Supreme Court held the notice insufficient as a matter of law, set aside the verdict and granted judgment in the City's favor (2005 NY Slip Op 30375[U]); the Appellate Division affirmed (41 AD3d 235 [2007]). In *Shaperonovitch*, Supreme Court denied the City's post-trial motion to set aside the verdict, and entered

judgment in plaintiffs' favor; this judgment, too, was affirmed by the Appellate Division (49 AD3d 709 [2008]). We granted leave to appeal in both cases (10 NY3d 702, 712 [2008]), and now affirm in *D'Onofrio* and reverse in *Shaperonovitch*.

The symbol used in *D'Onofrio* was a straight line, indicating "[r]aised or uneven portion of sidewalk." There is no evidence, however, from which the jury could have found that such a defect caused Mr. D'Onofrio's injury. He testified that, as he was walking over a grating, both his feet became caught almost simultaneously, causing him to fall forward. He said that he felt the grating move, and that he observed broken cement in the area; he attributed his fall to "the movement of the grating, plus the broken cement, the combination of the two." It is not completely clear how the accident happened, but there is no evidence that Mr. D'Onofrio walked across a raised or uneven portion of a sidewalk, even on the assumption that the grating is part of the sidewalk. A photograph of the area where he fell does not show any surface irregularity or elevation. Since the defect shown on the Big Apple map was not the one on which the claim in *D'Onofrio* was based, the lower courts in that case correctly set aside the verdict and entered judgment in the City's favor.

The problem in *Shaperonovitch* is in a way the reverse of that in *D'Onofrio*: the nature of the defect that caused the accident is clear, but the symbol on the Big Apple map is not. Ms. Shaperonovitch testified that she tripped over an "elevation on the sidewalk." No unadorned straight line, the symbol for a raised portion of the sidewalk, appears on the Big Apple map at the relevant location. The *Shaperonovitch* plaintiffs rely on a symbol that does appear there: it is a line with a diamond at one end and a mark at the other that has been variously described as a poorly drawn X, the Hebrew letter shin, or a pitchfork without the handle. No symbol resembling this appears in the legend to the map. A Big Apple employee, called to testify by the City, acknowledged that Big Apple "did not notify the city of any raise" in the location where Ms. Shaperonovitch fell.

Plaintiffs in *Shaperonovitch* argue that the symbol on the map is "ambiguous" and that its interpretation is for the jury. We disagree; we do not see how a rational jury could find that this mark conveyed any information at all. Because the map did not give the City notice of the defect, the City was entitled to judgment as a matter of law.

Accordingly, in *D'Onofrio v City of New York*, the order of the Appellate Division should be affirmed, with costs. In *Shaperonovitch v City of New York*, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

JONES, J. (dissenting). Because I believe that the question of whether or not the Big Apple Pothole and Sidewalk Protection Corporation maps gave notice to the City of the defects injuring plaintiffs was properly decided by the jury, I respectfully dissent.

Mapping hazards is hardly an exact science. Although the symbols on the Big Apple maps were not designed to give notice of every unique defect found on the sidewalks and roads of New York City, each symbol on the map legend represents a general category of potentially hazardous defects (e.g., "Hole or hazardous depression," "Raised or uneven portion of sidewalk," "Pothole or other hazard"). Clearly, if no symbol or a completely different symbol is used on the map, the City does not receive notice of a given defect. It follows that where the defect could reasonably be encompassed by the symbol used on the map, the question of whether the City received notice of that defect is for the factfinder and not one that can be easily answered as a matter of law.

Plaintiff D'Onofrio was injured when he tripped over a combination of the movement of a loose metal grating and the broken cement alongside the edge of that grating. In the area where he fell, the Big Apple map depicted the defect as a "[r]aised or uneven portion of sidewalk." In my view, the gap created from the crumbling cement alongside the grating was an irregularity in elevation and could reasonably have been included under the category of "uneven . . . sidewalk"—it was at least a close call. This is not a case where a wrong symbol representing a different category of hazards was used (*compare Camacho v City of New York*, 218 AD2d 725 [2d Dept 1995] [no notice to the City where plaintiff was injured by a one foot deep hole but map symbol used was "raised or uneven sidewalk" rather than "hole or hazardous depression"]). To the contrary, no other symbol on the legend could more closely describe the instant hazard. As such, the question of notice to the City was properly resolved by the jury. Because the jury found that the City received notice, I would reverse the order of the Appellate Division and remit on the issue of apportionment of liability.

Plaintiff Shaperonovitch was injured when she tripped over an elevation on the sidewalk. Although such a defect would

properly be depicted as a straight line (the symbol representing a "[r]aised or uneven portion of sidewalk"), the ambiguous symbols used on the map were: (1) a diamond disconnected horizontally through the middle (or two letter "V"s, one upside down), (2) a straight line, and (3) a mark resembling a poorly drawn "X" or a pitchfork prong. I disagree with the majority that these symbols are meaningless. To the contrary, a deliberate mark on the map gives notice to the City of some defect—rather than no defect at all—at that location. As to which specific defects were depicted, the symbols could be reasonably interpreted in several ways. In my view, the question of whether the symbols were meaningless or whether they gave notice of one or more separate defects is not one that could be determined as a matter of law—the issue was properly resolved by the jury. Accordingly, I would affirm the order of the Appellate Division.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and READ concur with Judge SMITH; Judge JONES dissents and votes to reverse in a separate opinion in which Judge PIGOTT concurs.

In *D'Onofrio v City of New York:* Order affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and READ concur with Judge SMITH; Judge JONES dissents and votes to affirm in a separate opinion in which Judge PIGOTT concurs.

In *Shaperonovitch v City of New York:* Order reversed, with costs, and complaint dismissed.