OPINION OF THE COURT
Bernice D. Siegal, J.
In this negligence action, plaintiff seeks damages for injuries allegedly sustained on June 26, 2006 on the northwest corner of the public sidewalk located at 50th Street and First Avenue, New York. Plaintiff claims that, as she was walking southbound on First Avenue, her left foot entered a “dip or a slope” in the sidewalk, causing her to fall. The area where plaintiff fell, as shown by the proffered photographs, was the beginning of a pedestrian ramp which leads to the street.
In the absence of a court-ordered rule to the contrary, CPLR 3212 (a) requires motions for summary judgment to be made no later than 120 days after the filing of the note of issue, except with leave of court on good cause shown. Brill v City of New York (2 NY3d 648 [2004]) and its progeny require a moving party to demonstrate “good cause” for the delay in making a motion for summary judgment, “rather than simply permitting meritorious, nonprejudicial filings, however tardy. . . . No excuse at all, or a perfunctory excuse, cannot be ‘good cause’ ” (id. at 652).
The note of issue herein was filed on May 28, 2008. Pursuant to a so-ordered stipulation dated June 25, 2008, the parties *824 were given an extension of time to submit dispositive motions, in which motions for summary judgment were to be made returnable no later than October 28, 2008. All movants herein are, consequently, late in their submissions. However, the City, who is a cross movant in this action, is the only party to recognize its tardiness, and offer an excuse for its untimely submission. The City contends that, despite its request for plaintiffs deposition testimony, which was necessary to make its cross motion, it has yet to receive a copy to date. As a result, the City resigned itself to rely upon plaintiffs parsed deposition transcript, which was submitted as an exhibit in defendant RRES Restaurant Group’s original motion papers.
“Good cause” is shown where a party is made to wait for deposition transcripts in order to make its motion (see e.g. Kunz v Gleeson, 9 AD3d 480 [2004]; Burnell v Huneau, 1 AD3d 758 [2003]; Connors, CPLR 3212(a)’s Timing Requirement For Summary Judgment Motions, 71 Brook L Rev 1529, 1550-1551 [summer 2006] [delayed disclosure establishes “good cause” to entertain an otherwise late motion]). Since the City demonstrated good cause for the delay, its cross motion is deemed timely, and will be considered hereafter on the merits.
However, this court is now confronted with the unique circumstance of whether to consider the remaining motions and cross motion, all of which are untimely and submitted without any good cause shown. Generally, appellate courts have dealt with the situation of an untimely cross motion submitted without good cause which is, nevertheless, considered, if the issues raised therein are nearly identical to those made in a timely motion for summary judgment (see e.g. Step-Murphy, LLC v B&B Bros. Real Estate Corp., 60 AD3d 841 [2009]; Ellman v Village of Rhinebeck, 41 AD3d 635 [2007]; Grande v Peteroy, 39 AD3d 590 [2007]). This is premised upon the court’s ability to search the record and grant summary judgment to any nonmoving party (CPLR 3212 [b]), provided that the search is limited to those issues that are the subject of the timely motion (see Whitman Realty Group, Inc. v Galano, 52 AD3d 505 [2008]; Ellman, 41 AD3d at 636; Grande, 39 AD3d at 592). Therefore, since the City’s cross motion is deemed timely served, only those nearly identical issues raised by the remaining, albeit untimely, movants, will be considered pursuant to this court’s power to search the record before it.
Turning now to the issues raised in the cross motion itself, in general, liability for injuries sustained as a result of an alleg *825 edly dangerous condition on a public sidewalk is placed on the municipality, rather than the owner of the abutting land (see James v Blackmon, 58 AD3d 808 [2009]; Rocco v Marder, 42 AD3d 516 [2007]; Popowa v Neck Rd. One Realty, LLC, 41 AD3d 455 [2007]). However, liability for a pedestrian’s injuries will be imposed upon a landowner where the landowner: (1) affirmatively created the dangerous condition; (2) voluntarily but negligently made repairs to the sidewalk; (3) created the dangerous condition through a special use of the sidewalk; or (4) violated a statute or ordinance expressly imposing liability on the abutting landowner for failure to maintain the sidewalk (see James, 58 AD3d at 808; Rocco, 42 AD3d at 517; Jacobs v Village of Rockville Ctr., 41 AD3d 539 [2007]).
The thrust of the City’s first argument is based upon third-party plaintiffs’ alleged violation of Administrative Code of the City of New York § 7-210. This section of the Code, which applies to sidewalk accidents occurring on or after September 14, 2003, shifts liability for said accidents from the City of New York to the abutting landowner. The issue presented herein is whether plaintiffs accident falls within the purview of section 7-210.
Section 7-210 (a) provides, in relevant part, that “[i]t shall be the duty of the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, to maintain such sidewalk in a reasonably safe condition.” The Code further states that
“the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, shall be liable for . . . personal injury . . . proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags.” (Administrative Code § 7-210 [b].)
Shawn Rae, director of the pedestrian ramp unit for the New York City Department of Transportation, appeared on behalf of the City. Notably, Rae stated that (1) pedestrian ramps and sidewalk units are distinct constructions, and (2) the ramp at the subject location was constructed by the City prior to plaintiffs accident. This testimony establishes that the curb-cut *826 pedestrian ramp was not constructed by, on behalf of, or for the benefit of third-party plaintiffs. It further demonstrates that a “pedestrian ramp” is not a part of the “sidewalk”; thus, it does not fall within the ambit of section 7-210. Moreover, plaintiff alleges that her accident occurred, not because of a failure to maintain or repair a defect in the sidewalk, but rather, because of an alleged improperly designed pedestrian ramp, to wit: the steepness of its slope. Section 7-210 applies to maintenance work to be performed by abutting landowners, not to the features of the sidewalk themselves (see Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 522 [2008]).
A close reading of the statute, coupled with the circumstances discussed above, reveal that plaintiffs accident does not shift liability to the owners/third-party plaintiffs. This is especially true in light of the principle that “legislative enactments in derogation of common law, and especially those creating liability where none previously existed,” will be strictly construed (Morris v Snappy Car Rental, 84 NY2d 21, 28 [1994]; see Vucetovic, 10 NY3d at 521; Almadotter v City of New York, 15 AD3d 426 [2005]).
The case of Nasso v City of New York (2007 NY Slip Op 32826[U] [Sup Ct, Queens County 2007]) is analogous to the case at bar. The plaintiff in Nasso, much like plaintiff here, tripped and fell on a sidewalk pedestrian ramp. The court in Nasso opined that the City’s reliance upon Administrative Code § 7-210 was without merit:
“In the instant case, there is no issue of [the property owner’s] failure to maintain the sidewalk and there is no allegation that the sidewalk was broken or otherwise in a state of disrepair. . . . Rather, the groove that plaintiff alleges caused her to fall was part of the design of the ramp and was created by the contractor who made the ramp on behalf of the City. Therefore, § 7-210 does not apply to the facts of this case.” (Id. at *3.)
Based upon the aforementioned finding that Administrative Code § 7-210 is inapplicable to abutting landowners in this particular instance, this court, pursuant to its power to search the record (CPLR 3212 [b]), may grant summary judgment: (1) to defendants Sequoia Property Management Corp. and Harry Field Realty, LLC, dismissing plaintiffs complaint; and (2) to ABC Corporation, RRES, Ronald Kaplan, and Eytan Sugarman, dismissing the third-party action. Finally, since the basis for li *827 ability in the third-party action was contingent upon a finding of fault in the original action, it follows that the third-party action against the City should be similarly dismissed.
Accordingly, RRES’s motion for summary judgment dismissing the third-party complaint is granted. The portion of the City’s motion dismissing the third-party complaint and all cross claims is granted. The remaining portions of the City’s cross motion are denied as moot. The cross motion by Ronald Kaplan and Eytan Sugarman for summary judgment dismissing the third-party complaint is granted. The portion of the motion by Sequoia Property Management Corp. and Harry Field Realty, LLC dismissing plaintiff’s complaint is hereby granted. The remaining portion of said motion is denied as moot.