[884 NYS2d 417]

RAMONA ORTIZ, Respondent-Appellant, v CITY OF NEW YORK, Respondent-Appellant, and 240 WEST 98TH STREET ASSOCIATES et al., Appellants-Respondents. RAMONA ORTIZ, Respondent, v CITY OF NEW YORK, Respondent, and 240 WEST 98TH STREET ASSOCIATES et al., Appellants.

First Department, August 25, 2009

APPEARANCES OF COUNSEL

*Flynn, Gibbons & Dowd,* New York City (*Ann Teresa McIntyre* of counsel), for 240 West 98th Street Associates and another, appellants-respondents/appellants.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Deborah A. Brenner* and *Barry P. Schwartz* of counsel), for municipal respondent-appellant/respondent.

*Brian J. Isaac,* New York City, and *Gersowitz, Libo & Korek, P.C.,* New York City (*Edward H. Gersowitz* and *Julie T. Mark* of counsel), for Ramona Ortiz, respondent-appellant/respondent.

### OPINION OF THE COURT

ACOSTA, J.

At issue in this case is whether a corner pedestrian ramp

leading down a sidewalk onto the street is part of the "sidewalk" for purposes of Administrative Code of the City of New York § 7-210, which imposes tort liability on property owners who fail to maintain City-owned sidewalks in a reasonably safe condition. We hold that section 7-210 does not impose tort liability on abutting property owners for defects on pedestrian ramps. The City of New York is responsible for maintaining the pedestrian ramps, and there is evidence that the City was partially responsible for creating the hole in this particular ramp.

## Background

On February 3, 2005, plaintiff tripped and injured her knee when she stepped into a triangle-shaped hole in the bottom edge of a pedestrian ramp connected to the sidewalk adjacent to property owned by defendant 240 West 98th Street Associates and managed by defendant Weinreb Management, at 98th Street and Broadway in Manhattan. A missing street curb formed the base of the triangular hole. Plaintiff's expert conducted an inspection of the area of the accident and found several purported defects that, in his opinion, represented departures from city regulations and engineering standards. In particular, the expert found "no protective curb surrounding the concrete sidewalk curb ramp," that is, "[t]he street asphalt [met] the curb ramp directly." He thus concluded that either the City or its agents had constructed the curb ramp without a protective curb in place and without ensuring that the ramp was flush with the street, or the curb had sunk relative to the ramp and had been paved over. He opined, without contradiction by the City, that "the City . . . had actual knowledge of the missing or depressed protective curb as the street was paved directly to the curb ramp without a curb in place as required."

Defendant 240 moved for summary judgment, arguing, inter alia, that Administrative Code § 7-210, the new sidewalk law, did not apply to this case since the pedestrian ramp was not part of the sidewalk for which the adjacent property owner was liable. Section 7-210, it argued, requires only repair and maintenance of the "sidewalk flags," which are different from pedestrian ramps.

The City opposed the motion and cross-moved for summary judgment, arguing that, aside from the fact that Administrative Code § 7-210 transferred liability to the adjacent property owner, it was also not liable because there was no prior written notice of the defect causing plaintiff's injury. The City also noted that

the record contained no evidence of any fact that would bring the case within any exception to the prior written notice requirement. The City attached the deposition testimony of Sherry Johnson of the Department of Transportation, who stated that the City had searched the records and found no written notice, complaints or work performed at that location. The City also attached a map prepared by the Big Apple Pothole and Sidewalk Protection Committee (the Big Apple map), which had been served on the City prior to plaintiff's accident. This map contained no notation indicating a hole or cracked sidewalk at that location.

The court denied defendant 240's motion for summary judgment, holding that the pedestrian ramp was part of the sidewalk for which adjacent land owners were liable for maintenance and repair pursuant to Administrative Code § 7-210. The City's cross motion for summary judgment was granted solely to the extent of finding that the City had not received prior written notice of the hole. The court found, however, that issues of fact existed as to whether the City had caused or created the defect (not in the construction of the ramp itself, but in creating a height differential when it repaved the street). The court noted plaintiff's expert's finding that the average height differential at the base of the ramp edge measured 1½ to 2 inches, which provided an abrupt vertical transition creating a recognized tripping hazard. The expert also found (and photographs of the hole confirm) that the base of the triangular hole was caused by a missing curb. The court noted the expert's uncontradicted finding of no protective curb surrounding the concrete sidewalk curb ramp, and the City's actual knowledge of the missing or depressed protective curb, having paved the street directly to the curb ramp without a curb in place as required. The court noted that if the only claim were the premature failure of the concrete, under *Bielecki v City of New York* (14 AD3d 301 [2005]), the City would prevail.

Administrative Code § 7-210

At common law, prior to enactment of section 7-210, the City, and not the abutting landowner, was liable for injuries sustained by a pedestrian as a result of defects in the sidewalk, unless the owner created the defective condition or caused it through some special use. In addition, while the statutory scheme prior to enactment of section 7-210 required an abutting landowner to "install, construct, repave, reconstruct and repair the *sidewalk*

*flags* in front of or abutting such property" (Administrative Code § 19-152 [a] [1] [emphasis added]), and to remove snow, ice, dirt or other material from the sidewalk (Administrative Code § 16-123 [a]), the failure to abide by these provisions would expose the landowner to fines or require the landowner to reimburse the City for its expense in performing these acts (*Hausser v Giunta*, 88 NY2d 449, 452-453 [1996]), but would not expose the landowner to tort liability (*Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517, 520 [2008]; *see also Muniz v Bacchus*, 282 AD2d 387 [2001]; *Nicholson v City of New York*, 257 AD2d 532 [1999]).

In 2003, the New York City Council enacted section 7-210, which states in part:

> "a. It shall be the duty of the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, to maintain such sidewalk in a reasonably safe condition.

> "b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, shall be liable for any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk . . .

> "c. Notwithstanding any other provision of law, the city shall not be liable for any injury to property or personal injury, including death, proximately caused by the failure to maintain sidewalks . . . in a reasonably safe condition."

Applicable to incidents occurring on or after September 14, 2003, section 7-210 transferred liability for defective sidewalk flags from the City to all nonexempt adjacent property owners

(see *Klotz v City of New York*, 9 AD3d 392, 393 [2004]).[1] The primary intent of section 7-210 and the related amendments to the Code was to alleviate the practical and financial burdens the City faced in maintaining its sidewalks, while preserving an injured person's access to recovery (see *Gangemi v City of New York*, 13 Misc 3d 1112, 1121 [2006], citing Mayor Bloomberg's statement in signing Local Laws 49 and 54 of 2003 of the City of New York).

Another intent of the new sidewalk law was to address an anomaly in the prior statutory scheme, which ostensibly required property owners to maintain the sidewalks abutting their properties in good repair, but imposed no tort liability for their passive failure to do so (*Vucetovic*, 10 NY3d at 519). Liability was only incurred by the property owner for injuries arising from the negligent repair of the sidewalk, creation of the defective condition, or use of the sidewalk for a special purpose (*id.* at 520, citing *Hausser*, 88 NY2d at 453).

Therefore, the intent of the new sidewalk law, aside from financial considerations, was to encourage owners to comply with their preexisting obligations under Administrative Code § 16-123 (a) and § 19-152 (a), and ultimately to improve the condition of sidewalks citywide (see 2003 NY City Legis Ann, at 330-334).

Although the City clearly had the authority to transfer tort liability to abutting property owners under the new scheme (*Hausser*, 88 NY2d at 452-453), section 7-210 of the Code is nonetheless in derogation of the common law and must thus be strictly construed (*Vucetovic*, 10 NY3d at 521; see generally McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a]). Therefore, if the City desired, with the enactment of the new sidewalk law, to shift liability for accidents on pedestrian ramps, "it needed to use specific and clear language to accomplish this goal" (10 NY3d at 522).

---

1. Exemptions exist for owners of one-, two- or three-family owner-occupied dwellings used exclusively for residential purposes, as well as City-owned property (Administrative Code § 7-210 [b], [c]). Neither exemption is claimed here. Along with section 7-210, the City Council enacted sections 7-211 and 7-212 to protect individuals injured on defective sidewalks covered by the new sidewalk law. Section 7-211 requires owners of real property, other than public corporations, to purchase liability insurance covering personal injury occurring on the sidewalks abutting the property. If the adjoining landowner does not have insurance, section 7-212 authorizes the Comptroller, after consultation with the Corporation Counsel, to pay up to $50,000 for uncompensated medical expenses if certain conditions are met.

■ As quoted above, section 7-210 (b) states that the abutting landowner is liable for injuries caused by a failure to maintain the "sidewalk" in a reasonably safe condition, and the "[f]ailure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk." While the section states "but not be limited to," the Court of Appeals has held that "this clause applies to the types of maintenance work to be performed, not the specific features of what constitutes a sidewalk" (*Vucetovic*, 10 NY3d at 522). Therefore, the abutting landowner's liability, as it relates to its failure to maintain the "sidewalk," is limited to its failure to repair, replace, etc. "sidewalk flags." There is simply no indication anywhere in the amendments, or for that matter in the legislative history of section 7-210, that the City Council intended to include pedestrian ramps as part of the sidewalk that the abutting property owner would be responsible for maintaining. As the Court of Appeals noted in *Vucetovic*, Administrative Code § 7-210 mirrors section 19-152, which merely required the abutting property owner to "install, construct, repave, reconstruct and repair the sidewalk flags" abutting the property (10 NY3d at 519).

Moreover, the City's Highway Rules regarding "Sidewalk, Curb and Roadway Work" mandate the specific construction requirements of sidewalk "flags" (34 RCNY 2-09 [f] [4] [vii]) and "Pedestrian ramps" (§ 2-09 [f] [4] [xiv]), clearly indicating that the City views the two as separate and distinct items. Additionally, Administrative Code § 19-112 ("Ramps on curbs") provides in pertinent part:

> "In the construction and installation of all new and reconstructed curbs at corner located street intersections and pedestrian crosswalks not located at street intersections, provision shall be made for the installation of the following: two ramps at corners located at street intersections and one ramp at pedestrian crosswalks not located at street intersections [continuing to discuss the specific requirements for the construction of such ramps]."

Thus, section 19-112 includes ramps as part of the curb, not the sidewalk, in both its title heading and its text. The abutting

landowner is not responsible for maintaining and repairing these ramps (*see Rodriguez v Sequoia Prop. Mgt. Corp.*, 24 Misc 3d 822 [Sup Ct, Queens County 2009]), and the motion court thus improperly denied defendant 240's motion for summary judgment.[2]

---

**2.** Aside from our holding that section 7-210 does not encompass pedestrian ramps, it is not entirely clear that the City would have been permitted to transfer its obligations to private property owners in any event, under the Americans with Disabilities Act of 1990 (Pub L 101-336), which prohibits discrimination in the provision of public services. Specifically, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" (42 USC § 12132). Pursuant to this section, a public entity's failure to install pedestrian ramps when it resurfaces a street is in violation of the ADA (*Kinney v Yerusalim*, 9 F3d 1067 [3d Cir 1993]). As the court there noted, Congress's concerns with physical barriers led to a "particular emphasis on the installation of curb cuts" (*id*. at 1071). Indeed, the House Report for the legislation noted that "[t]he employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets" (HR Rep 485 [II], 101st Cong, 2d Sess, at 84, reprinted in 1990 US Code Cong & Admin News, at 367). As such, "*under this title, local and state governments are required to provide curb cuts on public streets*" (*id*. [emphasis added]; *see also* 28 CFR 35.151 [e] [regulation mandating the installation of pedestrian ramps whenever a city "alter(s)" a street]).

Consistent with the language of the regulations and the legislative history, the Federal Highway Administration of the United States Department of Transportation opined in a question and answer format (*see* http://www.fhwa.dot.gov/civilrights/ada_qa.htm) that a public agency may not "make" private individuals or businesses responsible for ADA title II (as well as Rehabilitation Act of 1973 § 504 [codified at 29 USC § 794]) mandated pedestrian access. This opinion, however, is inconsistent with opinion letters issued by the Department of Justice, which has opined that "the ADA does not regulate the manner in which a covered entity, such as [a city], should finance changes it must make in order to bring itself into compliance with the ADA" (Department of Justice, Civil Rights Division, Advisory Op 797 [Aug. 5, 1999], available at http://www.usdoj.gov/crt/foia/tal797.php). Therefore, "public entities are free to allocate these cost[s] among their residents in any manner authorized by state law," as long as a "surcharge [is not imposed] against a particular individual or group of individuals with disabilities" (*id*. at 2 [DOJ opined that City of Lancaster, Pennsylvania was not in violation of title II of the ADA by requiring house owner to replace curb ramps and/or sidewalks adjacent to house as part of City's annual street improvement project]; *see also* Advisory Opinion No. 472 [Mar. 15, 1994], available at http://www.usdoj.gov/crt/foia/tal472.txt [same opinion]). Significantly, unlike the statute in Lancaster, Administrative Code § 7-210 exempts owners of one-, two- or three-family owner-occupied dwellings used exclusively for residential purposes. Regardless of whether the City can transfer its obligation to install and maintain pedestrian ramps to private entities, it cannot, by Administra-

(n. cont'd)

Notice

█ Contrary to plaintiff's assertions, the City did not receive prior written notice of the hole that allegedly caused plaintiff to trip (Administrative Code § 7-201 [c] [2]). The Big Apple map on which plaintiff relied did not constitute such notice because the "awareness of one defect in the area is insufficient to constitute notice of a different particular defect which caused the accident" (*Roldan v City of New York*, 36 AD3d 484 [2007]). In other words, markings showing a crack on the sidewalk do not give notice of a hole at the end of that crack. The markings on a Big Apple map must give notice of the particular defect alleged to have caused the injury (*see D'Onofrio v City of New York*, 11 NY3d 581 [2008]; *Laughton v City of New York*, 30 AD3d 472 [2006]; *Waner v City of New York*, 5 AD3d 288 [2004]).

█ There are issues of fact, however, as to whether the City caused or created the hole. On a motion for summary judgment,

> "[w]here the City establishes that it lacked prior written notice . . . , the burden shifts to the plaintiff to demonstrate the applicability of one of two recognized exceptions to the [requirement of prior written notice]—that the municipality affirmatively created the defect through an act of negligence or that a special use resulted in a special benefit to the locality" (*Yarborough v City of New York*, 10 NY3d 726, 728 [2008]).

Furthermore, "the affirmative negligence exception . . . [is] limited to work by the City that immediately results in the existence of a dangerous condition" (*Bielecki*, 14 AD3d at 301, quoted in *Yarborough* at 728).

Here, plaintiff submitted evidence through her expert that the City was partly responsible for creating the hole. Indeed, there is evidence that the City repaved the street and either buried the curb or simply failed to install one, which created a $1^1/_2$-to-2-inch vertical drop from the ramp to the street. The expert further noted, and the photographs confirm, that the missing curb, which was the City's responsibility, accounted for the base of the triangular hole. And, as the court below found, the City never opposed these facts. We thus respectfully disagree with the dissent on this issue.

Accordingly, the order of Supreme Court, New York County (Karen S. Smith, J.), entered February 25, 2008, which denied

tive Code § 7-210, shift its liability for ADA title II violations to private entities (*see Pickern v Pier 1 Imports [U.S.], Inc.*, 457 F3d 963 [9th Cir 2006]).

the motion of defendants abutting property owner and property manager for summary judgment dismissing the complaint and all cross claims as against them, should be reversed, on the law, without costs, the motion granted, and the complaint and all cross claims dismissed as against them. Order, same court and Justice, also entered February 25, 2008, which granted defendant City's motion for summary judgment dismissing the complaint and all cross claims as against it only to extent of finding that the City had not received prior written notice of the hole in the ramp over which plaintiff allegedly tripped, and denied the motion to the extent of finding that issues of fact exist as to whether the City had caused or created the hole, should be affirmed, without costs. Appeal from order, same court and Justice, also entered February 25, 2008, which denied the motion of the property owner and manager to vacate the note of issue, should be dismissed, without costs, as academic. The Clerk is directed to enter judgment in favor of defendants property owner and property manager dismissing the complaint and all cross claims.

SWEENY, J. (dissenting in part). I dissent on one issue: whether the plaintiff has raised a question of fact that the City can be held responsible for plaintiff's accident. She has not; therefore, the complaint should be dismissed in its entirety.

The majority correctly notes that because there was no prior written notice of the defect, the burden is on plaintiff to establish the City's liability. The majority is also correct that the City can only be responsible if it created the defect by its negligent construction or repair, and if the work immediately results in the existence of a dangerous condition (*Yarborough v City of New York*, 10 NY3d 726, 728 [2008], citing *Bielecki v City of New York*, 14 AD3d 301[2005]).*

The majority relies primarily on the plaintiff's expert's report, which dealt primarily with the following alleged defects:

> "the curb ramp provides an *'abrupt vertical transition'* which is dangerous and hazardous to users at the base of the ramp creating a significant tripping hazard . . . The difference in heights creates a trap and snare due to the change in levels . . . Either the curb has sunk relative to the ramp and was

---

* There is a second ground to establish liability, namely, the creation of a special use by the City, which concededly does not apply here.

paved over or the curb is missing entirely. In either case, there is no protective curb in place, thereby permitting the raised concrete ramp to be exposed to impact traffic . . . [T]he concrete ramp was improperly constructed too thin at the base of the ramp at only $1^{1/2}$" to 2" thick, which permitted premature failure of the concrete.''

Even accepting the expert's observations, they are completely irrelevant to the issue before us. Plaintiff never stated any of these conditions were the cause of her fall. She stated, unequivocally, that the fall resulted from her stepping into a hole. Although the report makes reference to a hole leading from a crack in the pavement, nowhere in the expert's report does he state the actions of the City resulted in the immediate creation of that hole. At best, the report indicates there may have been a layer of pavement that gradually wore away or cracked because of constant traffic, thereby creating the hole over time. However, there is nothing but pure speculation to say that hole was an immediate result of the City's work.

Accordingly, plaintiff failed to meet her burden under *Yarborough* that the actions of the City resulted in the immediate creation of the hazard that caused her injury.

Saxe and Freedman, JJ., concur with Acosta, J.; Tom, J.P., and Sweeny, J., dissent in part in a separate opinion by Sweeny, J.

Order, Supreme Court, New York County, entered February 25, 2008, reversed, on the law, without costs, the motion granted, and the complaint and all cross claims dismissed as against defendants property owner and property manager. Order, same court, entered February 25, 2008, affirmed, without costs. Appeal from order, same court, entered February 25, 2008, dismissed, without costs, as academic. The Clerk is directed to enter judgment in favor of defendants property owner and property manager dismissing the complaint and all cross claims.