OPINION OF THE COURT
Ben R. Barbato, J.
In this action for personal injuries arising from, inter alia, violations of Labor Law §§ 200, 240 (1) and 241 (6), plaintiff moves seeking an order granting him partial summary judgment with respect to liability on his claims premised on Labor Law §§ 240 (1) and 241 (6). Plaintiff claims that he slipped and fell through an opening when its cover failed. Plaintiff alleges that the foregoing accident constitutes a violation of 12 NYCRR 23-1.7 (b) (1) (i) and, therefore, a violation of Labor Law § 241 (6). Defendants oppose plaintiff’s motion, asserting that insofar as plaintiff was provided with a lanyard, and was required to and failed to use it, plaintiff’s conduct was the sole proximate cause of his fall. Based on the foregoing, defendants’ cross-move seeking an order granting them summary judgment and dismissal of plaintiff’s claims pursuant to Labor Law §§ 240 (1) and 241 (6). Defendants also seek summary judgment dismissal of plaintiff’s claim premised on common-law negligence and *948 Labor Law § 200 asserting that plaintiff’s accident arose from the means employed by plaintiff’s employer, over whom defendants exercised neither supervision nor control. Plaintiff opposes defendants’ cross motion only to the extent summary judgment is sought on his claims pursuant to Labor Law §§ 240 (1) and 241 (6). Saliently, plaintiff contends that his failure to use his lanyard was not the sole proximate cause of his accident, and that since it is undisputed that the cover over the opening through which he fell failed, summary judgment in his favor is, therefore, warranted.
For the reasons that follow hereinafter plaintiff’s motion is granted, in part and defendants’ cross motion is denied.
The instant action is for alleged personal injuries arising from, inter alia, alleged violations of the Labor Law. A review of plaintiff’s complaint establishes, in relevant part, the following: On June 26, 2013, while working within premises located at 1 World Trade Center, New York, NY, plaintiff sustained injury. Specifically, plaintiff, an employee of DCM Erectors, fell through an opening which was improperly covered. It is alleged that defendant Port Authority of New York and New Jersey (PANYNJ) owned the premises, defendant 1 World Trade Center, LLC (1 WTC) leased the premises, defendant Tishman Construction Corp. was retained by PANYNJ and 1 WTC to perform work at the premises, and defendants retained DCM to perform work. It is further alleged that defendants were negligent in failing to keep the premises reasonably safe and that they violated Labor Law §§ 200, 240 (1) and 241 (6), said negligence causing plaintiff’s accident and the injuries resulting therefrom.
Standard of Review
The proponent of a motion for summary judgment carries the initial burden of tendering sufficient admissible evidence to demonstrate the absence of a material issue of fact as a matter of law (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Thus, a defendant seeking summary judgment must establish prima facie entitlement to such relief as a matter of law by affirmatively demonstrating, with evidence, the merits of the claim or defense, and not merely by pointing to gaps in plaintiff’s proof (Mondello v DiStefano, 16 AD3d 637, 638 [2d Dept 2005]; Peskin v New York City Tr. Auth., 304 AD2d 634, 634 [2d Dept 2003]). There is no requirement that the proof be *949 submitted by affidavit, but rather that all evidence proffered be in admissible form (Muniz v Bacchus, 282 AD2d 387, 388 [1st Dept 2001], superseded by statute as stated in Ortiz v City of New York, 67 AD3d 21, 25 [1st Dept 2009]). Notably, the court can consider otherwise inadmissible evidence, when the opponent fails to object to its admissibility and instead relies on the same (Niagara Frontier Tr. Metro Sys. v County of Erie, 212 AD2d 1027, 1028 [4th Dept 1995]).
Once movant meets his initial burden on summary judgment, the burden shifts to the opponent who must then produce sufficient evidence, generally also in admissible form, to establish the existence of a triable issue of fact (Zuckerman at 562). It is worth noting, however, that while the movant’s burden to proffer evidence in admissible form is absolute, the opponent’s burden is not. As noted by the Court of Appeals,
“ [t] o obtain summary judgment it is necessary that the movant establish his cause of action or defense ‘sufficiently to warrant the court as a matter of law in directing summary judgment’ in his favor, and he must do so by [the] tender of evidentiary proof in admissible form. On the other hand, to defeat a motion for summary judgment the opposing party must ‘show facts sufficient to require a trial of any issue of fact.’ Normally if the opponent is to succeed in defeating a summary judgment motion, he, too, must make his showing by producing eviden-tiary proof in admissible form. The rule with respect to defeating a motion for summary judgment, however, is more flexible, for the opposing party, as contrasted with the movant, may be permitted to demonstrate acceptable excuse for his failure to meet strict requirement of tender in admissible form. Whether the excuse offered will be acceptable must depend on the circumstances in the particular case” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068 [1979] [citations omitted]).
Accordingly, generally, if the opponent of a motion for summary judgment seeks to have the court consider inadmissible evidence, he must proffer an excuse for failing to submit evidence in inadmissible form (Johnson v Phillips, 261 AD2d 269, 270 [1st Dept 1999]).
Moreover, when deciding a summary judgment motion the role of the court is to make determinations as to the existence *950 of bonafide issues of fact and not to delve into or resolve issues of credibility. As the Court stated in Knepka v Tallman (278 AD2d 811, 811 [4th Dept 2000]), “Supreme Court erred in resolving issues of credibility in granting defendants’ motion for summary judgment dismissing the complaint. Any inconsistencies between the deposition testimony of plaintiffs and their affidavits submitted in opposition to the motion present . . . issues for trial” (citations omitted; see also Yaziciyan v Blancato, 267 AD2d 152, 152 [1st Dept 1999]; Perez v Bronx Park S. Assoc., 285 AD2d 402, 404 [1st Dept 2001]). Accordingly, the court’s function when determining a motion for summary judgment is issue finding not issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Lastly, because summary judgment is such a drastic remedy, it should never be granted when there is any doubt as to the existence of a triable issue of fact (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]). When the existence of an issue of fact is even debatable, summary judgment should be denied (Stone v Goodson, 8 NY2d 8, 12 [1960]).
Plaintiff’s Motion
Labor Law § 240 (1)
Plaintiff’s motion seeking summary judgment on the issue of defendants’ liability on his claim pursuant to Labor Law § 240 (1) is granted. On this record, which demonstrates that the plywood cover over the opening through which plaintiff fell failed, plaintiff establishes a violation of Labor Law § 240 (1) and, thus, entitlement summary judgment.
Labor Law § 240 (1) requires that
“[a] 11 contractors and owners and their agents . . . who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
Labor Law § 240 (1) applies where the work being performed subjects those involved to risks related to elevation differentials (Gordon v Eastern Ry. Supply, 82 NY2d 555, 561 [1993]; Roco *951 vich v Consolidated Edison Co., 78 NY2d 509, 514 [1991]). Specifically, the hazards contemplated by the statute “are those related to the effects of gravity where protective devices are called for . . . because of a difference between the elevation level of the required work and a lower level” (Gordon at 561 [internal quotation marks omitted]). Since Labor Law § 240 (1) is intended to prevent accidents where ladders, scaffolds, or other safety devices provided to a worker prove inadequate so as to prevent an injury related to the forces of gravity (id.), it applies equally to injuries caused by falling objects and falling workers (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267-268 [2001]).
For purposes of liability, a violation of the statute which proximately causes an employee to sustain injury gives rise to absolute liability (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 287 [2003]; Gordon at 559). Notably, under Labor Law § 240 (1), a complete failure to provide the safety devices promulgated by the statute constitutes a violation thereof, and is, in and of itself, conclusive proof of proximate causation (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 519 [1985]). Hence, if the evidence demonstrates that the defendants failed to provide any safety devices at all, the statute has been violated as a matter of law (id.). By contrast, when a defendant does provide safety equipment and an accident nevertheless occurs, the adequacy, functionality, and placement of said device must be assessed in order to determine whether there has been a violation of the Labor Law (Narducci at 267 [“liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein”]). When a defendant provides some, but not all the safety devices required by the statute, Labor Law § 240 (1) is nonetheless violated if a defendant fails to provide plaintiff with the safety devices intended to protect the plaintiff from each and every height related risk associated with the particular work being performed (Felker v Corning Inc., 90 NY2d 219, 224 [1997] [Court held that plaintiff was exposed to two different elevation related risks, the first for which defendant provided an adequate safety device; the second, for which defendant did not. Defendant, thus violated Labor Law § 240 (1)]; Barnaby v A. & C. Props., 188 AD2d 958, 959-960 [3d Dept 1992] [“Although plaintiff was provided with a safety device intended to protect him from the risk inherent in having to work at a height of up to 8 1/2 feet above the floor level, he was *952 provided with no device to protect him from the risk inherent in working in a window opening some 15 to 20 feet above the ground. Because no device was provided to protect plaintiff from this elevation-related risk, the order granting plaintiff’s motion for summary judgment on the liability issue should be affirmed”]). Thus, the relevant inquiry is whether given the particular risk involved a safety device intended to protect against each and every risk was provided (Felker at 224; Barnaby at 959-960).
To be sure, in Barnaby (at 959), plaintiff was tasked with framing windows inside a building. At the time of the accident, the work was being performed indoors and plaintiff was provided with a ladder to access the windows which extended some 10 feet above the floor (id.). As plaintiff worked atop the ladder, he stumbled and fell through the window and to the ground outside the building, some 15 to 20 feet below (id.). In granting plaintiff partial summary judgment on the issue of liability, the Court found that while defendant satisfied the statute in providing a ladder to plaintiff for the work on the windows inside the building, by failing to provide a safety device designed to protect against plaintiff’s fall through and out the window, the defendant violated the Labor Law § 240 (1) (id. at 959-960).
It is well settled that under Labor Law § 240 (1), owners of the location where an accident occurs and the general contractor employed by the owner are absolutely liable irrespective of whether they exercised supervision and/or control over the particular work from which the accident arose (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; Haimes v New York Tel. Co., 46 NY2d 132, 135 [1978]). This means, that because the duty imposed by Labor Law § 240 (1) is nondele-gable, owners and general contractors remain liable for a breach of the statute even if the work is farmed out to an independent contractor (Gordon at 559; Ross at 500; Rocovich at 513). Additionally, the absolute liability imposed by Labor Law § 240 (1) means that a plaintiff’s contributory or comparative negligence is wholly irrevelant in determining liability and does not bar recovery or serve to offset liability (Stolt v General Foods Corp., 81 NY2d 918, 919 [1993]; Bland v Manocherian, 66 NY2d 452, 460-461 [1985]).
Since construction work, however, can be delegated to another, the party to whom such work is delegated is only liable under Labor Law § 240 (1) if such party—such as a subcontrac *953 tor—controls and exercises supervision over the work from which the accident arises (Russin v Louis N. Picciano & Son, 54 NY2d 311, 318 [1981]; Serpe v Eyris Prods., 243 AD2d 375, 379-380 [1st Dept 1997]). The determinative factor on the issue of control is not whether the agent or subcontractor merely furnishes equipment, but rather, whether such subcontractor has actual control over the work and the authority to insist that proper safety practices be followed (Serpe at 380; Iveson v Sweet Assoc., 203 AD2d 741, 742 [3d Dept 1994]).
Not every accident at a work site means that the Labor Law has been violated (Blake at 288-289; Narducci at 267). As the Court in Narducci noted,
“[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein” (Narducci at 267).
Significantly, Labor Law § 240 (1) was not intended to penalize those people who, by providing the requisite safety equipment, have complied with the statute (Blake at 286). Indeed, neither owners, contractors, nor agents are the insurers of a plaintiff’s safety and are merely required to abide by the statute (id.). A distinction must be made between those accidents caused by the failure to provide a safety device required by Labor Law § 240 (1) and those caused by general hazards specific to a workplace (Narducci at 268-269). The former, a violation of Labor Law § 240 (1) giving rise to liability, the latter negating it (Rodriguez v Margaret Tietz Ctr. for Nursing Care, 84 NY2d 841, 843-844 [1994]; Thompson v St. Charles Condominiums, 303 AD2d 152, 154 [1st Dept 2003]).
There are several defenses to a Labor Law § 240 (1) claim, but the ones most often interposed are the sole proximate cause and the recalcitrant worker defenses. First, a defendant can avoid liability under the statute if it can demonstrate that it did not violate Labor Law § 240 (1) and that the sole proximate cause of the accident was plaintiffs own negligence (Blake at 290 [“Plaintiff argues that he is entitled to recover in the face of a record that shows no violation and reveals that he was entirely responsible for his own injuries. There is no basis for this argument. Even when a worker is not recalcitrant, we have held that there can be no liability under section 240 (1) *954 when there is no violation and the worker’s actions (here, his negligence) are the sole proximate cause of the accident. Extending the statute to impose liability in such a case would be inconsistent with statutory goals since the accident was not caused by the absence of (or defect in) any safety device, or in the way the safety device was placed” (internal quotation marks omitted)]; Weininger v Hagedorn & Co., 91 NY2d 958, 960 [1998] [“Supreme Court erred, however, in directing a verdict in favor of plaintiff, at the close of his own case, on the issue of proximate cause. In the circumstances presented, a reasonable jury could have concluded that plaintiffs actions were the sole proximate cause of his injuries, and consequently that liability under Labor Law § 240 (1) did not attach”]). As the Court in Tate v Clancy-Cullen Stor. Co. (171 AD2d 292, 296 [1st Dept 1991]), aptly stated Labor Law § 240 (1) “does not give absolution to the plaintiff [when] his injury has been caused, exclusively, as a result, of his own willful or intentional acts” (emphasis omitted). Thus, provided a defendant can establish that it complied with Labor Law § 240 (1), as per Blake, a violation of the Labor Law which proximately causes plaintiffs accident is mutually exclusive with plaintiffs negligence as a proximate cause of his accident, and, thus, defendant cannot be liable (Blake at 290). Accordingly, the foregoing defense only applies if, and only if, a defendant has complied with the statute and no violations of the same can be shown (Davidson v Ambrozewicz, 12 AD3d 902, 903 [3d Dept 2004]).
Second, a defendant can negate liability by establishing entitlement to the recalcitrant worker defense. This defense allows a defendant to escape liability if it demonstrates that the plaintiff refused to use the safety devices provided (Gordon at 562-563; Stolt at 920; Hagins v State of New York, 81 NY2d 921, 922-923 [1993]; Miraglia v H&L Holding Corp., 306 AD2d 58, 58 [1st Dept 2003]; Smith v Hooker Chems. & Plastics Corp., 89 AD2d 361, 366 [4th Dept 1982]). Implicit in this defense is the notion that proper equipment was actually provided, and that it was functional and safe. Hence, an instruction to employees that they not use available but defective equipment is not akin to providing the requisite and safe equipment mandated by the statute (Gordon at 563; Stolt at 920; Hagins at 922-923). Consequently, an employer who provides unsafe equipment cannot assert the recalcitrant worker defense by averring that he instructed the employees not to use said equipment (Gordon at 563; Stolt at 920; Hagins at 922-923). In *955 Gordon, for example, the Court found that the recalcitrant worker defense did not apply when the evidence established that although plaintiff was instructed to use scaffold to perform his work, the ladder provided—which plaintiff, in disregard of the instructions given, chose to use—failed (Gordon at 563). Saliently, the Court held that under the foregoing facts, defendant failed to establish that plaintiff had been provided with safe equipment in the first place, i.e., the ladder (id.). Conversely, in Smith, the Court denied plaintiff’s motion for partial summary judgment when one version of the facts established the applicability of the recalcitrant worker defense inasmuch as a witness testified that plaintiff chose to engage in work without the functional safety devices made available to him (Smith at 363 [“Thus, by plaintiff’s testimony the accident occurred because the safety devices failed; by Toth’s version plaintiff fell off the roof because he declined to use the safety devices supplied to him. Third-party defendant contends that this evidence raises a question of fact requiring a trial, and so it would seem. Plaintiff contends, however, that whether his evidence or Toth’s is accepted, Special Term’s order was proper”]).
It is well settled that Labor Law § 240 (1) is violated not only when a worker performing a covered activity falls through an unprotected opening in the floor or platform upon which he is working (Burke v Hilton Resorts Corp., 85 AD3d 419, 419-420 [1st Dept 2011]; Pichardo v Urban Renaissance Collaboration Ltd. Partnership, 51 AD3d 472 [1st Dept 2008]), but also when, while working at an elevation, a worker falls through an opening on the floor or platform because a door or floor covering fails (Restrepo v Yonkers Racing Corp., Inc., 105 AD3d 540, 540 [1st Dept 2013] [summary judgment granted to plaintiff on his claim pursuant to Labor Law § 240 (1) when while working in an attic, he fell through a door on the floor, that opened as he traversed over it]; Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 449-450 [1st Dept 2013] [summary judgment granted to plaintiff when he fell through a hole after the plywood covering it flipped-up as he traversed it]).
In support of his motion, plaintiff submits his deposition transcript wherein he testified, in pertinent part, as follows: On June 26, 2013, he was employed by DCM as an apprentice. On the foregoing date, he was working at 1 World Trade Center and his duties required him to assist DCM’s journeymen who *956 were performing ironwork. At some point, he was asked to assist two other DCM employees—Joe Robinson and Patrick Kes-ser—in lifting a float from the building’s roof to its antenna. The building’s roof was located on the 105th floor and the antenna, also known as the communication ring, was located above the roof and consisted of three levels. Plaintiff was asked to lift the float—200 pound, six-feet by five-feet platform used by welders to reach certain areas—from the roof to the first level of the antenna. Plaintiff reported to the first level of the antenna along with Robinson and Kesser. The floor thereat was made of metal grating and had several openings, which were covered by plywood. This first level of the antenna spanned the entire building and was bordered by safety lines to prevent anyone from falling off. Once at the first level of the antenna, plaintiff was asked to attach his lanyard—attached to his harness—to a beam behind him. He attached the lanyard thereto by wrapping it around the beam. He, along with Robinson and Kesser, then proceeded to pull the float up to the first level from the roof below. The float, which was attached to ropes, was being pulled by plaintiff, while Robinson and Kes-ser, who were positioned alongside plaintiff, stabilized the same. At some point plaintiff was told to move to the right and in order to move, he detached his lanyard. He looked around for another tie-off point for his lanyard and found none. As he took a step back, he stepped onto a plywood cover on the floor, felt it shift, and thereafter, fell through the hole located thereunder. Plaintiff testified that he was told that he could not use the safety lines surrounding the antenna as a tie-off point for his lanyard because they could break.
Plaintiff also submits Ginny Gibson’s deposition transcript wherein he testified, in pertinent part, as follows: In June 2013, he was employed by Tishman at 1 World Trade Center in connection with the construction of a building. Tishman was the construction manager on the project, responsible for oversight of the work, and Gibson was the project safety manager, responsible for the project’s safety. DCM was retained to provide ironwork services. On June 26, 2013, Gibson was notified about an accident involving plaintiff, an employee of DCM. Gibson was told that plaintiff fell from the first level of the ring beams surrounding the spire. The spire was located above the 105th floor and above the roof. The first and lowest level of the ring beams was approximately 33 feet above the roof, was comprised of metal, and resembled grating. There were several *957 openings on the ring’s floor where vertical features would, at some point, be placed. The openings were covered by plywood, which was cleated to prevent movement. The ring was also bordered by railing to prevent falls. DCM’s workers were required to use fall protection when working at heights exceeding six feet—namely lanyards. Lanyards, as observed by Gibson, were made of nylon web and when used, would not allow a worker to fall more than six feet. When used, lanyards had to be tied off to anchor points, such points capable of withstanding weights of 5,000 pounds. Because the railing surrounding the ring beam could not support weights exceeding 350 pounds, lanyards could not be tied off to the railing. Never having been on the ring beams, Gibson was unaware of where and what kind of anchor points were located there. However, having seen DCM workers using lanyards, he knew that such points existed. Tishman had the authority to stop any contractor’s work if the same was being performed unsafely.
Plaintiff submits Robert Romano’s deposition transcript wherein he testified, in pertinent part, as follows: In 2013, Romano was employed by PANYNJ as a project safety manager assigned to a project at the premises located at 1 World Trade Center. His responsibilities included the inspection of the project and the identification of unsafe conditions and practices. PANYNJ owned the premises, Tishman was the construction manager for the project, and DCM was the structural steel/ ironwork contractor. Romano was told that plaintiff had been involved in an accident when he fell through a hole while working on a temporary catwalk located on the first level of the communication ring. The first level of the communication ring was located 35 feet above the roof and the 105th floor. The catwalk was affixed to the ring and was a few feet lower than the ring. The catwalk was made of metal and had holes on the floor used for vertical penetrations. PANYNJ’s safety plan required that all workers working at heights exceeding 15 feet use fall protection. It also required that any openings in floors be covered and that such covering be labeled as having a hole underneath.
Plaintiff also submits a host of documents, none of them in admissible form." Based on the foregoing, plaintiff establishes prima facie entitlement to summary judgment inasmuch as his *958 evidence demonstrates that his accident was the result of a violation of Labor Law § 240 (1) which violation proximately caused his accident. As noted above, a violation of Labor Law § 240 (1) which proximately causes an employee to sustain injury gives rise to absolute liability (Blake at 287; Gordon at 559). Moreover, Labor Law § 240 (1), applies where the work being performed subjects those involved to risks related to elevation differentials (Gordon at 561; Rocovich at 514); meaning, hazards “related to the effects of gravity where protective devices are called for . . . because of a difference between the elevation level of the required work and a lower level” (Gordon at 561 [internal quotation marks omitted]). Significantly, and as relevant here, it is well settled that Labor Law § 240 (1) is violated when, while working at an elevation, a worker falls through an opening on the floor or platform because a door or floor covering fails (Restrepo at 540; Alonzo at 449-450).
Here, plaintiffs testimony establishes that as he worked approximately 30 feet above the ground—the roof of the building located on the 105th floor—he fell through an opening on the floor of the ring while he was attempting to pull a float up to the ring’s floor. While the hole through which he fell was covered with plywood, the same nevertheless slipped when plaintiff stepped on it; moving and therefore, allowing plaintiff to fall through. Accordingly, plaintiff’s testimony, by itself, is sufficient to establish a violation of Labor Law § 240 (1) and that such violation caused plaintiff’s accident.
While defendants contend that plaintiff’s fall was caused solely by his failure to use the fall protection at his disposal—a lanyard—such defense, on this record, does not avail defendants. It is well settled that a defendant can avoid liability under the statute if it can demonstrate that it did not violate Labor Law § 240 (1) and that the sole proximate cause of the accident was plaintiff’s own negligence (Blake at 290; Weininger at 960). Thus, Labor Law § 240 (1) “does not give absolution to the plaintiff [when] his injury has been caused, exclusively, as a result, of his own willful or intentional acts” (Tate at 296 [emphasis omitted]). Hence, it is also well settled that a de *959 fendant can negate liability by establishing entitlement to the recalcitrant worker defense; namely that the plaintiff refused to use the safety devices provided and that such failure caused the accident (Gordon at 562-563; Stolt at 920; Hagins at 922-923; Miraglia at 58; Smith at 366). However, the foregoing defenses only apply if a defendant has complied with the statute. Meaning that no violations of the same exist (Davidson at 903).
While defendants contend that the instant accident was solely caused by plaintiff’s decision to perform his task unaided by his lanyard—in that he unhooked himself from the beam to which he had been secured moments before his fall—because his fall was also caused by the failing plywood cover, neither the sole proximate cause defense nor the recalcitrant worker defense provide defendants any absolution. Stated differently, the failing plywood cover is a violation of Labor Law § 240 (1) (Restrepo at 540; Alonzo at 449-450), which violation—even if plaintiff was recalcitrant in failing to use his lanyard—serves to preclude the applicability of the recalcitrant worker or the sole proximate cause defense (Davidson at 903; see Blake at 290 [“Under Labor Law § 240 (1) it is conceptually impossible for a statutory violation (which serves as a proximate cause for a plaintiff’s injury) to occupy the same ground as a plaintiff’s sole proximate cause for the injury. Thus, if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it. Conversely, if the plaintiff is solely to blame for the injury, it necessarily means that there has been no statutory violation”]).
In addition to the foregoing, the court’s conclusion finds ample support in prevailing law. Where, as here, a worker fails to utilize a safety device provided to him, such failure cannot be deemed recalcitrance when other Labor Law § 240 (1) violations contribute to the accident. In Kouros v State of New York (288 AD2d 566, 567 [3d Dept 2001]), the Appellate Division held that plaintiff was entitled to summary judgment on his claim pursuant to Labor Law § 240 (1) when the scaffold upon which he stood collapsed, even though he failed to use the lanyard which he was provided and told to use. Significantly, plaintiff fell when while working on a pier at an elevation requiring him to use a lanyard, he nevertheless detached his lanyard and proceeded to step onto a scaffold that collapsed (id. at 567). Because plaintiff was told to use his lanyard at all times while on the pier, was provided with the lanyard and a safety line, and chose to disregard the foregoing instructions, *960 defendants argued that his accident was solely caused by his recalcitrance (id. at 567). The Court disagreed, holding that
“[e]ven if the disputed issue of fact were to be resolved against claimant, his failure to have at least one lanyard attached to the static line at all times establishes only that he was negligent in detaching both lanyards and in failing to reattach to the safety line after crossing the pier and prior to the collapse of the scaffold. A worker’s contributory negligence, however, is not a defense to a Labor Law § 240 (1) claim” (id. at 567).
Thus, the Court held that the failure to use available safety devices, which arguably could have prevented his fall was merely evidence of comparative negligence when, as there, the accident involved another and independently failing safety device under Labor Law § 240 (1). In Portes v New York State Thruway Auth. (112 AD3d 1049 [3d Dept 2013]), the Court came to the same conclusion. There, plaintiff was working on a painting project on one of defendant’s bridges when a suspension cable upon which he was walking broke, causing him to fall and sustain injuries (id. at 1049). Despite evidence that plaintiff was provided with a lanyard and was told to use it, and evidence that plaintiff failed to use it, the court nevertheless found the recalcitrant worker defense inapplicable and merely found evidence of comparative negligence (id. at 1050-1051 [“Defendant produced proof that, contrary to claimant’s assertion, a separate safety cable was available that he should have used instead of attaching his lanyard to the cable upon which he was walking. By attaching his lanyard to the suspension cable, claimant protected against the risk of falling but not the possibility of the cable breaking. While this action by claimant could go to comparative negligence (which is not available in a Labor Law § 240 [1] action), it was not the sole proximate cause of the accident and does not establish the recalcitrant worker defense”]).
Nothing submitted by defendants raises an issue of fact sufficient to preclude summary judgment. To be sure, defendants’ opposition seeks to establish, via both evidence submitted in admissible and inadmissible form, that plaintiff’s accident was solely caused by his failure to use the fall device provided to him and/or caused by his use of drugs at the time of the instant accident. With regard to the former assertion—that plaintiff’s failure to use a lanyard despite a requirement that he do so and despite available anchor points—such assertion does not *961 avail them. As noted above, on this record, plaintiffs version of the accident is uncontroverted—namely, that he fell when the plywood cover slipped as he stepped onto it; causing him to fall through the hole located thereunder. On these facts, the only defenses recognized by law—that plaintiff was recalcitrant or that his negligence was the sole proximate cause of his accident do not apply as a matter of law (Kouros at 567; Portes at 1050-1051). With regard to the latter assertion, that plaintiffs use of opiates prior to his fall warrants denial of his motion, the court finds it without merit. Here, first and foremost, the report from defendants’ toxicologist—Elizabeth Spratt—is un-sworn and thus inadmissible. Second, at best, it establishes that plaintiff tested positive for the presence of an opiate at the time of his accident and that such presence can impair cognitive and motor function. Even if the court construes this assertion in a manner most adverse to plaintiff, in light of plaintiffs testimony, it is at best tantamount to comparative negligence, which as discussed above does not avail defendants on a claim pursuant to Labor Law § 240 (1). Accordingly, this portion of plaintiffs motion is granted.
Labor Law § 241 (6)
Plaintiffs motion seeking partial summary judgment on the issue of defendants’ liability pursuant to Labor Law § 241 (6) is denied insofar as questions of fact with regard to his comparative negligence precludes summary judgment. Significantly, the record establishes that plaintiff failed to use his lanyard and, thus, whether his decision is tantamount to negligence and to what extent it contributed to the accident are for a jury to determine.
Labor Law § 241 states that “[a] 11 contractors and owners and their agents . . . when constructing or demolishing buildings” shall comply with, inter alia, the requirements under Labor Law § 241 (6), which require that
“[a] 11 areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family *962 dwellings who contract for but do not direct or control the work, shall comply therewith.”
Thus, Labor Law § 241 (6) imposes a duty of reasonable care upon owners, contractors and their agents. Moreover, owners, contractors and their agents must provide reasonable and adequate protection to those employed in all areas where construction, excavation, or demolition is being conducted (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 348 [1998]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). The duty imposed by this section of the Labor Law is nondelegable, meaning that an owner, contractor or agent can be held liable for the breach of the statute absent supervision or control of the particular work site at issue (Rizzuto at 348-349; Ross at 502). Significantly, a violation of Labor Law § 241 (6) necessarily requires a failure to comply or adhere to external rules and statutes (Ross at 503). Thus, a violation of this provision of the Labor Law requires “reference to outside sources to determine the standard by which a defendant’s conduct must be measured” (id. at 503 [internal quotation marks omitted]; see Zimmer v Chemung County Performing Arts, 65 NY2d 513, 523 [1985]). More specifically, in order to establish a violation of Labor Law § 241 (6), it must be shown that a defendant also violated an applicable section of a rule or regulation promulgated by the Commissioner of Labor, which mandates compliance with concrete specifications (Ross at 501-502; Basile v ICF Kaiser Engrs. Corp., 227 AD2d 959, 959 [4th Dept 1996]). Violations of the Occupational Safety and Health Administration regulations do not form the basis for liability under Labor Law § 241 (6) (Schiulaz v Arnell Constr. Corp., 261 AD2d 247, 248 [1st Dept 1999]; Greenwood v Shearson, Lehman & Hutton, 238 AD2d 311, 313 [2d Dept 1997]).
Accordingly, a violation of Labor Law § 241 (6) requires a violation of an underlying statute or rule and such statute or rule must be one that prescribes a concrete and specific standard of conduct (Rizzuto at 350; Ross at 503). Moreover, the facts alleged must be tantamount to a violation of the Industrial Code section asserted (Buckley v Columbia Grammar & Preparatory, 44 AD3d 263, 271 [1st Dept 2007]).
A violation of Labor Law § 241 (6) imposes absolute liability upon an owner, contractor or agent, even if the foregoing parties did not control or direct the accident causing work (Long v Forest-Fehlhaber, 55 NY2d 154, 159 [1982]; Allen v Cloutier Constr. Corp., 44 NY2d 290, 300 [1978]), and indeed, absent active negligence (Kane v Coundorous, 293 AD2d 309, 312 [1st *963 Dept 2002]). However, unlike a violation of Labor Law § 240 (1) which establishes conclusive negligence, a violation of Labor Law § 241 (6) does not conclusively establish negligence and is instead “merely some evidence [of negligence] which the jury may consider on the question of defendant’s negligence” (Rizzuto at 349 [internal quotation marks and emphasis omitted]; see also Long at 159; Teller v Prospect Hgts. Hosp., 280 NY 456, 460 [1939]). Thus, a party may not be liable under Labor Law § 241 (6), even if it is established that said party failed to comply with an applicable predicate statute. Moreover, unlike Labor Law § 240 (1), contributory and comparative negligence are valid defenses to any allegation pursuant to Labor Law § 241 (6) (Rizzuto at 350; Long at 161).
Because the issue of comparative negligence serves to diminish the extent of a defendant’s liability, when there is an issue of fact regarding a plaintiff’s negligence in an action premised on a violation of Labor Law § 241 (6), summary judgment in plaintiff’s favor must be denied (Duffina v County of Essex, 111 AD3d 1035, 1039 [3d Dept 2013] [“Furthermore, inasmuch as there is conflicting evidence as to whether, as plaintiff’s expert opines, the brake failure was caused by inadequate maintenance, there exist factual issues concerning whether the claimed violation was a proximate cause of plaintiff’s injuries, as well as questions regarding his comparative fault”]; Gniewek v Consolidated Edison Co., 271 AD2d 643, 644 [2d Dept 2000] [summary judgment on plaintiff’s claim pursuant to Labor Law § 241 (6) denied when there existed “questions of fact as to the plaintiff’s comparative negligence for purposes of Labor Law § 241 (6)”]; Drago v New York City Tr. Auth., 227 AD2d 372, 373 [2d Dept 1996] [“The injured plaintiff’s knowing decision to continue with the installation of the new cable only a few feet from the live old cable creates a question of fact regarding the injured plaintiff’s potential comparative negligence”]).
While an owner and general contractor are statutorily liable for a violation of Labor Law § 241 (6), an agent, such as a subcontractor, is liable for a violation of Labor Law § 241 (6) only when it has been delegated supervision or control of a the accident causing activity (Russin v Louis N. Picciano & Son, 54 NY2d 311, 318 [1981]; Serpe v Eyris Prods., 243 AD2d 375, 379-380 [1st Dept 1997]; Everitt v Nozkowski, 285 AD2d 442, 443 [2d Dept 2001]). Said subcontractor’s or agent’s liability under Labor Law § 240 (1) is limited to a breach of Labor Law § 241 (6) with respect to those areas and activities and control *964 actually delegated to agent or contractor (Everitt at 443). In other words, a subcontractor cannot be liable for a breach of the Labor Law in an area of the work site or for an activity falling outside the ambit of the control or supervision delegated (id.).
Prima facie entitlement to summary judgment is established when plaintiff demonstrates that Labor Law § 241 (6) has been violated insofar as defendant has violated a rule or regulation promulgated by the Commissioner of Labor, which mandates compliance with concrete specifications (Ross at 501-502; Basile at 959).
Here, plaintiff’s own evidence raises an issue of fact on the issue of his comparative negligence such that summary judgment on his claim pursuant to Labor Law § 241 (6) must be denied. To be sure, plaintiff premises his Labor Law § 241 (6) claim on a violation of 12 NYCRR 23-1.7 (b) (1) (i), which requires that “[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule).” The foregoing section has been deemed a sufficiently specific predicate for purposes of Labor Law § 241 (6) (Alonzo at 450) and thus is no impediment to the instant motion. However, based on plaintiff’s testimony, while his accident occurred under circumstances giving rise to a violation of 12 NYCRR 23-1.7 (b) (1) (i), in that the cover required by the foregoing rule failed, he also testified that he voluntarily chose to detach himself from the beam to which he had been told to attach his lanyard and to which he had been tethered seconds prior to his fall. A jury could find that plaintiff’s decision, especially in light of testimony by Gibson and Romano that plaintiff was required to use fall protection and had access to longer double lanyards, is tantamount to negligence, and that such negligence contributed to the instant accident. Thus a question of fact as to whether plaintiff contributed to his fall precludes summary judgment on this portion of plaintiff’s motion.
Defendants’ Cross Motion
Labor Law § 240 (1)
Defendants’ cross motion seeking summary judgment on plaintiff’s claim pursuant to Labor Law § 240 (1) is denied for the reasons discussed above. Much as defendants did in opposing plaintiff’s motion via a separate affirmation, in support of *965 the instant cross motion, defendants submit a host of evidence which they contend demonstrates that plaintiff was the sole proximate cause of his accident either in failing to remain attached to his lanyard and/or to the anchor points available or because he was under the influence of opiates, which impaired his function. First, as noted at length above, plaintiffs failure to use a lanyard despite having access to multiple anchor points and despite being told to do so does not avail defendants. As noted above, on this record plaintiff was not the sole proximate cause of his accident. Thus, even if the court credits the affidavit of defendants’ expert, Jacob L. Fisher, an engineer, who concludes that plaintiff had multiple tie off points for his lanyard at the time of his accident, summary judgment would be denied because here, it is uncontroverted that plaintiff fell when the plywood covering the hole through which he fell failed. This is an independent violation of Labor Law § 240 (1) (Restrepo at 540; Alonzo at 449-450), and therefore, the sole proximate cause/recalcitrant worker defense is unavailable to defendants (Davidson at 903). Second, while in support of their cross motion defendants submit Spratt’s report in admissible form, as discussed above, it at best gives rise to comparative negligence, which does not avail a defendant on a claim pursuant to Labor Law § 240 (1). Again, Pratt’s report, at best, establishes that plaintiff tested positive for the presence of an opiate at the time of his accident and that such presence can impair cognitive and motor function. This is merely tantamount to comparative negligence.
Labor Law § 241 (6)
Defendants’ cross motion seeking summary judgment on plaintiff’s claim pursuant to Labor Law § 241 (6) is denied insofar as if plaintiff’s evidence is credited, defendants violated 12 NYCRR 23-1.7 (b) (1) (i) and, thus, violated Labor Law § 241 (6). Thus, defendants fail to establish prima facie entitlement to summary judgment. As discussed, plaintiff testified that the plywood cover over the hole through which he fell failed. This testimony, if credited, establishes that 12 NYCRR 23-1.7 (b) (1) (i) was violated and that it caused or was a cause to the accident. Summary judgment, must therefore be denied.
Labor Law § 200
Defendants’ cross motion seeking summary judgment on plaintiff’s claim pursuant to Labor Law § 200 is denied insofar as defendants fail to establish prima facie entitlement to summary judgment. While defendants’ evidence sufficiently *966 establishes that plaintiff was employed by DCM and that this accident arose from DCM’s means and methods, vis-a-vis the float plaintiff and his coworkers were lifting at the time of the accident, defendants submit no admissible evidence demonstrating that they had no control over plaintiff’s work.
Labor Law § 200 (1) reads,
“[a] 11 places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.”
Labor Law § 200 codifies the common law, requiring that an owner and general contractor provide workers with a safe place to work (Rizzuto at 353; Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]; Russia v Louis N. Picciano & Son, 54 NY2d 311, 317 [1981]; Allen v Cloutier Constr. Corp., 44 NY2d 290, 299 [1978]). For purposes of liability pursuant to Labor Law § 200, the lynchpin is supervision and control. In other words, the party against whom liability is sought must “have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition” (Rizzuto at 352).
It is well settled that an owner or general contractor’s general control over the work giving rise to the injury is insufficient for purposes of Labor Law § 200. Specifically,
“[t]he retention of the right to generally supervise the work, to stop the contractor’s work if a safety violation is noted, or to ensure compliance with safety regulations, does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to Labor Law § 200” (Dennis v City of New York, 304 AD2d 611, 612 [2d Dept 2003]; Brown v New York City Economic Dev. Corp., 234 AD2d 33, 33 [1st Dept 1996] [Court held that oversight responsibility as opposed to specific work of any subcontractor was insufficient to impose liability for a Labor Law § 200 upon the owner]; Carty v *967 Port Auth. of N.Y. & N.J., 32 AD3d 732, 732-733 [1st Dept 2006]).
Accordingly, under Labor Law § 200, in addition to liability for a dangerous condition arising from the methods employed by a subcontractor, over which the owner or general contractor exercised supervision and/or control (Comes at 877; Allen at 299; Dalanna v City of New York, 308 AD2d 400, 400 [1st Dept 2003]), liability can also arise when the accident is caused by a dangerous condition at the work site that was either created by the owner or general contractor or about which they had prior notice (see Mitchell v New York Univ., 12 AD3d 200, 201 [2004]; Ortega v Pueda, 57 AD3d 54, 61-62 [2008]; Paladino v Society of N.Y. Hosp., 307 AD2d 343, 345 [2003]).
Here, while plaintiff’s testimony regarding the instant accident clearly establishes that his accident arose solely from DCM’s work (rather than a dangerous condition upon the work site), by whom he was employed, and at whose direction he found himself lifting a float from the roof to the first level of the communication ring, nothing submitted by defendants establishes that they did not possess the ability to direct and/or control plaintiff’s work and, thus, the activity from which the accident arose. Under Labor Law § 200, liability for an accident arising solely from the means employed by the plaintiff, as here, only lies if an owner or general contractor exercised supervision and/or control over the accident-causing work (Comes at 877; Allen at 299; Dalanna at 400). Thus, liability is then ordinarily only obviated when the foregoing control or supervision is absent. Accordingly, defendants fail to establish prima facie entitlement to summary judgment on this cause of action. It is hereby ordered that defendants be deemed liable to plaintiff on his claim pursuant to Labor Law § 240 (1).

 The proponent of a motion for summary must tender sufficient admissible evidence to demonstrate the absence of a material issue of fact as a matter of law (Alvarez at 324; Zuckerman at 562). Moreover, while a busi *958 ness record is an exception to rule barring hearsay, the foundation for such exception requires that (1) the record be made in the regular course of business; (2) it is the regular course of business to make said record; and (3) the records were made contemporaneous with the events contained therein (CPLR 4518; People v Kennedy, 68 NY2d 569, 579 [1986]). Here, plaintiff submits documents but provides no foundation for their admissibility and therefore the court cannot consider them.